JaSHORTESS, Judge.
In 1979 Ashy-Bickham Baker (ABB),[1] a partnership in commendam, developed a shopping center in Baker, Louisiana. The two original tenants of the shopping center were The Kroger Company (Kroger) and K Mart Corporation (K Mart). K Mart entered into a lease with ABB on May 15, 1979, and Kroger and ABB executed a lease, together with a lease agreement “supplementing and completing” the lease, on August 20, 1979.
On February 1, 1984, Kroger assigned its lease to The Great Atlantic & Pacific Tea Company (A & P). A & P in turn assigned the lease to Super Fresh/Sav-A-Center, Inc. (plaintiff), on April 19, 1990. On January 5, 1994, K Mart assigned its lease to Albert-son’s, Inc. (Albertson’s). Albertson’s intends to operate a grocery store on the premises.
Plaintiff then filed suit against ABB, Al-bertson’s, and K Mart, seeking preliminary and permanent injunctions and declaratory relief. Plaintiff contends that it is the beneficiary of an agreement between Kroger and K Mart whereby K Mart would not operate a grocery store on its premises, and that its lease with ABB prohibits ABB from leasing any part of the shopping center premises for use as a grocery store. It seeks to enjoin the lease to Albertson’s and to enjoin Albert-son’s from operating a store selling groceries in more than 500 square feet of the shopping center. It also seeks a declaration that if Albertson’s is permitted to sell groceries in more than 500 square feet of the shopping center, ABB has breached its lease and plaintiff is entitled to cancel the lease and recover any damages it may sustain as a result of the breach.
Albertson’s filed a reconventional demand seeking a declaration that its assignment of lease allows it to use the premises for any lawful purpose, including the operation of a ^grocery store, without restriction.[2] At the close of plaintiffs case, the trial court granted an involuntary judgment of dismissal, dismissing plaintiffs case and granting Albert-son’s reconventional demand. Plaintiff appeals.
EVIDENTIARY ISSUES
Plaintiff contends the trial court committed two evidentiary errors. First, it complains the trial court erred in sustaining a hearsay objection to a memo signed by C.N. Ballsrud dated March 31, 1975, which plaintiff attempted to introduce during the testimony of Sidney Fazio, the attorney for ABB at the time the original leases were executed. Ballsrud, Kroger’s national property manager, testified he drafted the memo to his real estate managers after reaching an agreement with K Mart. The trial court permitted the document to be filed for the limited purpose of showing “what Mr. Fazio did as a result of what was in the memo.”[3] Plaintiff contends the document should have been admitted for all purposes as it was a business record of Kroger.
*534 At the time plaintiff sought to introduce the document, it failed to lay a foundation for admission of a business record. Furthermore, Ballsrud testified regarding the agreement, and the document was merely cumulative of his testimony. The trial court did not commit legal error in admitting the memo for a limited purpose rather than for the truth of the statements contained therein.
Plaintiff also complains the trial court erred in sustaining an objection to a question to Boyd Gramling, ABB’s realtor, as to whether K Mart ever objected to ABB granting aj^'food exclusive” to Kroger, stating the trial court “erred in silencing Mr. Gramling during his testimony on this point.” Graml-ing answered the question, then Albertson’s objected because the question assumed K Mart was asked if it objected. The trial court responded: “Lay a foundation. Now, I want to hear names and dates in the conversations.” Plaintiff then dropped the subject entirely without attempting to lay a foundation or proffering Gramling’s testimony.
Plaintiff asked the question again, and Al-bertson’s again objected. The trial court ruled that unless plaintiff could show Graml-ing had ever had communications with K Mart, he could not testify as to whether K Mart objected.
The trial court did not err in requiring a foundation for the question. The trial court did not “silence” Gramling; plaintiffs counsel simply declined to continue the line of questioning, and in doing so failed to preserve any ground for complaint on appeal.
INVOLUNTARY JUDGMENT OF DISMISSAL
A. Plaintiff’s actions against K Mart and Albertson’s
Plaintiff contends the trial court erred in granting an involuntary judgment dismissing its entire suit. In a non-jury case, the trial court may grant an involuntary judgment of dismissal if it determines the plaintiff has failed to present sufficient evidence in his case-in-chief to establish his claim by a preponderance of the evidence. La.C.C.P. art. 1672(B); Hutzler v. Cole, 93-0486, p. 5 (La.App. 1st Cir. 3/11/94), 633 So.2d 1319, 1323, writ denied, 94-0850 (La. 5/13/94), 637 So.2d 1070. In making the determination, the trial court is not required to review the evidence in the light most favorable to the plaintiff but must evaluate the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. A dismissal based on Louisiana Code of Civil Procedure article 1672(B) should not be reversed in Rthe absence of manifest error. Hutzler, 93-0486 at 5-6, 633 So.2d at 1323-1324.
K Mart’s lease did not restrict it from selling groceries. That lease provided: “The premises hereby demised may be used for any lawful purpose.” Plaintiff contends, however, that the “intended use” of the K Mart premises was a “non-grocery” and that Albertson’s cannot use the premises for a non-intended use. Alternatively, plaintiff contends that it was the third party beneficiary of an agreement between K Mart and Kroger whereby K Mart would sell only a very limited amount of groceries[4] on its premises, and that Albertson’s assumed this obligation when it assumed K Mart’s lease.
The trial court dismissed the suit because it found plaintiff failed to prove by a preponderance of the evidence that there was an agreement between K Mart and Kroger. In light of the conflicting evidence in the record, the trial court’s finding that there was no agreement between Kroger and K Mart is a permissible view which is not manifestly erroneous. See Stobart v. State, 617 So.2d 880, 883 (La.1993). Plaintiffs claims against K Mart and Albertson’s based on the existence of that agreement therefore fall. We find no manifest error in the trial court’s decision dismissing plaintiffs suit against K Mart and Albertson’s.
B. Plaintiff’s actions against ABB
Plaintiffs suit against ABB, however, did not turn on the existence of the agreement between K Mart and Kroger. The original lease between Kroger and ABB, which was *535 assumed by plaintiff, provides in pertinent part as follows:
Landlord covenants and agrees not to lease ... any part of the Shopping Center premises for the purpose of conducting therein or for use as, a food store ...; provided, however, that nothing contained herein shall prevent any tenant in the Shopping Center from selling such products as an incidental |6part of its other and principal business so long as the total number of square feet devoted by such tenant to the display for sale of such products does not exceed ... 500 square feet *_ Landlord acknowledges that in the event of any breach hereof Tenant’s remedies at law would be inadequate and therefore, in such event, Tenant shall be entitled to cancel this Lease or to relief by injunction, or otherwise, at Tenant’s option, and Tenant’s remedies shall be cumulative rather than exclusive....
 The trial court found that because ABB’s attorney reviewed the K Mart lease and advised Kroger it did not conform to Kroger’s lease, ie., that it did not contain a food sales restriction, ABB had done all it could have done to protect Kroger. Fazio testified he pointed out the conflict both to Kroger and to Gramling, ABB’s realtor, and suggested Gramling check with K Mart about possible, modification of K Mart’s lease. Fazio did not recall anyone ever checking with K Mart. Mitchell N. Ashy, the general partner of ABB, testified he was not aware of the conflict in the leases, nor was he aware of any agreement between Kroger and K Mart.
It is undisputed that ABB executed lease contracts with Kroger and K Mart which contained conflicting provisions and which were assignable without ABB’s concurrence. ABB did nothing itself to reconcile those conflicts. Even if ABB’s attorney made Kroger aware of the potential problem, that act does not relieve ABB of its obligations to plaintiff, as Kroger’s assignee, under the lease.
Of course, both leases cannot be enforced as written. The K Mart lease preceded the Kroger lease; the subsequent execution of the Kroger lease did not invalidate the “any lawful purpose” provision of the K Mart lease. However, plaintiff has shown in its case-in-chief that ABB breached its lease with plaintiff by leasing part of the shopping center to ^Albertson’s to be used as a grocery store. It may be entitled to a declaration that the lease has been breached and that it is entitled to cancellation and/or damages for breach. Since the trial court granted an involuntary judgment of dismissal at the close of plaintiffs case and thus ABB had no opportunity to present a defense, we cannot make that determination at this time. We thus must reverse the judgment dismissing the declaratory judgment portion of plaintiffs suit and remand this case for the completion of the trial against ABB on the declaratory judgment action.
C. Albertson’s reconventional demand
Albertson’s never presented any evidence in support of its reconventional demand, and the court’s finding that plaintiff failed to prove its case by a preponderance does not necessarily mean Albertson’s proved its case. The trial court did not advise plaintiff at the beginning of the trial that its casein-chief on the main demand would be considered its defense of the reconventional demand, and plaintiff may have had other witnesses to present in defense of that action. For these reasons, we must reverse and remand the judgment granting Albertson’s re-conventional demand for declaratory judgment and remand this suit to the trial court.
CONCLUSION
For the foregoing reasons, the judgment of the trial court dismissing plaintiffs injunction action against Albertson's, K Mart, and ABB is affirmed; the judgment dismissing plaintiffs declaratory judgment action against ABB is reversed; and the judgment granting Albertson’s reconventional demand is reversed. This ease is remanded to the trial court for further action consistent with this opinion. A1 costs of this appeal are divided *536 equally among ABB, Albertson’s, and Super Fresh.
AFFIRMED IN PART; REVERSED IN PART, AND REMANDED.

. The partnership was originally called “Mitch Ashy-Baker, a limited partnership.”

. The parties also filed various cross-claims and third party demands against one another, all of which were severed from the trial of the main and reconventional demands.

.At the beginning of the trial, plaintiff stated he was introducing the Ballsrud memo in connection with the trial depositions of Ballsrud, James Hodge, and Jim Sloan.

. K Mart wanted to be able to sell candy and snacks.

 2500 sq. ft. (exclusive of any adjacent aisle space) in the instance of the K-Mart store during such time that the K-Mart Corporation is a tenant in the shopping center.